# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOSEPH LAGANA | * | |
| Plaintiff | * | |
| v | * | Civil Action No. PJM-10-1232 |
| J.P. MORGAN | * | |
| Defendant | * | |

## MEMORANDUM

Pending is Defendant's Motion to Dismiss or for Summary Judgment. ECF No. 19. Plaintiff opposes the motion. ECF No. 28. Upon review of the papers filed, the Court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2010). For the reasons that follow, Defendant's motion, construed as a Motion for Summary Judgment, shall be granted.

### Background

Plaintiff alleges he has been the subject of abuse, harassment, and retaliation due to the lawsuits he has filed against correctional staff. Specifically, he claims: he was denied photocopies needed for legal claims; medical diet trays were sabotaged; he was refused toilet paper; he was denied access to a doctor; he was subjected to cell searches during which legal documents were confiscated; and he was forced to be housed with prison gang members.[1] ECF No. 1 at Att. 1.

Plaintiff claims the denial of access to photocopies denies him access to courts because at the time he was "exploring" legal actions such as sentence reductions, appellate actions, sentence modification, and drug treatment. ECF No. 4 at p. 2. Defendant, the Warden at Western Correctional Institution (WCI), asserts that Plaintiff's case manager, Ms. Winter, met with him

---

[1] Plaintiff offers no further evidence in support of his claim regarding gangs; therefore, the Court assumes he has abandoned this claim. *See* ECF No. 4 and 28.

on September 9, 15, and 17, 2010 and on October 6 and 13, 2010, to make copies of numerous documents as requested by Plaintiff. Winter's predecessor, Mr. Bittinger, also made numerous copies of legal documents for Plaintiff. ECF No. 19 at Ex. 2 and 3. Defendant states that Plaintiff and other inmates confined to disciplinary segregation have fewer resources than general population inmates due to their lockdown status.[2] *Id*. at Ex. 4 and 6. Plaintiff is frequently in possession of other inmates' legal documents which he erroneously claims are his own. *Id*. at Ex. 7. Plaintiff's administrative remedy complaint ("ARP") concerning copy work was dismissed on appeal on August 30, 2010, after it was noted that he was provided with a voluminous amount of copies. *Id*. at Ex. 2 and 3.

With respect to his medical diet Plaintiff claims that since he filed complaints in this and other courts his food tray was brought to him with missing food and the snack bags he was provided contained only condiments. He further claims all of the food was smeared with butter making it inedible. He states the discrepancy between his tray and everyone else's trays establishes an Eighth Amendment claim. ECF No. 4 at pp. 3 – 4. Defendant states that meal trays are prepared at the same time and all trays are prepared the same way. ECF No. 19 at Ex. 8. Plaintiff complained that the mustard on his tray was touching his meat (*Id*. at Ex. 7) and that his margarine was placed under hot food so it would melt (*Id*. at Ex. 10). The manner in which meal trays are prepared together with the number of trays prepared makes tampering with any individual's tray impossible and also makes accommodation of any one particular request (e.g., preferences regarding condiments) unfeasible. With respect to Plaintiff's 2000 calorie a day diet, Defendant states that the medical order for the diet was not received by the Dietary staff immediately, causing a brief delay in implementation. *Id*. at Ex. 8. The delay was a matter of

---

[2] Plaintiff was assigned to disciplinary segregation on May 22, 2010, for refusing housing.

days and was not intentional. Defendant further states that Plaintiff's complaints that his tray does not have as much food on it as others is due to the reduction in calories, not an attempt to harass him. *Id.*

With respect to Plaintiff's claim he was denied toilet paper, Defendant states that segregation inmates are provided with one roll of toilet paper per week which is handed out by inmate workers. ECF No. 19 at Ex. 12 and 13. Plaintiff filed an ARP complaining that one roll is not enough and his complaint was dismissed as frivolous. *Id*. Plaintiff did not appeal the dismissal.

Plaintiff alleges that in order to receive medical care he must submit five to six sick call slips over a three- to four-week period and even when he is seen, he is not given the treatment that is prescribed, forcing him to again request medical care. ECF No. 4. Defendant denies Plaintiff's allegation that he was prevented from receiving medical care. ECF No. 19 at Ex. 7. Defendant explains that the procedure for requesting medical care. An inmate places a sick call; his name is placed on a pass list; and if he does not show up, medical staff report to the housing unit to obtain the inmate's signature on a waiver form. The purpose of the procedure is to prevent officers from denying inmates access to medical care. Defendant provides medical records which indicate that Plaintiff was seen on a number of occasions. *Id*. at Ex. 2. When Plaintiff was interviewed by medical staff about his complaint, he became disruptive and uncooperative, prompting an end to the interview. *Id*. His complaint was then investigated by Dr. Tessema who found that Plaintiff was receiving proper care. *Id*. at Ex. 14.

Plaintiff also alleges that Defendant limited him to filing five Administrative Remedy Procedure complaints ("ARP") per month, violating his due process rights under the Fourteenth

Amendment. ECF No. 4 at p. 5. He states that Defendant's characterization of his claims as frivolous is improper. *Id*. On December 1, 2009, Lt. Friend and Sgt. Shimko met with Plaintiff to discuss possible informal resolutions of the numerous pending ARP complaints he had filed. ECF No. 19 at Ex. 7 and 13. Plaintiff was uncooperative during the interview, indicating no interest in informal resolutions of his claims. *Id*. Plaintiff was told by Shimko that if he stopped refusing housing and returned to general population there would be no more delays in services such as copy work and requests from the library. *Id*. Due to the number of frivolous or malicious complaints filed by Plaintiff, Shimko requested a limitation on the number of complaints Plaintiff could file per month. *Id.* at Ex. 7. On March 6, 2010, the request to limit Plaintiff to five ARPs per month was approved by the Deputy Commissioner of Correction. *Id*. at Ex. 13 and 18. The restriction expired on September 16, 2010. *Id*. at Ex. 7.

Plaintiff also claims his cell was searched to harass him in retaliation for previously filed litigation. Defendant states that Plaintiff's cell search on April 6, 2010, was a random search frequently conducted in correctional facilities. ECF No. 19 at Ex. 23. Another search of Plaintiff's cell was conducted on May 10, 2010, because information had been received that Plaintiff's cell mate, Emmit Watson, was in possession of fraudulent information. The search turned up various social security numbers, website addresses, and letterhead bearing the name "Emmit Watson J. Foundation." *Id*. Plaintiff's possessions were also searched because cell mates can easily hide possessions for each other. Defendant denies that Plaintiff was ever left without a mattress, toilet paper or a chair, and further denies that anyone destroyed documents during the course of searching Plaintiff's cell. *Id*. Plaintiff's ARP alleging the search of his cell

was harassment was dismissed because he was unable to produce any proof of intent to harass him and all confiscated property was returned. *Id*. at Ex. 24.

## Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original). "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and

citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

Access to Courts

Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U. S. 817, 821 (1977). However:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U. S. 343, 355 (1996).

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997) *quoting Lewis*, 518 U.S. at 355. "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis v. Casey*, 518 U.S. 343, 349 (1996).

Plaintiff claims that he was denied photocopies and that legal documents were confiscated during a cell search. Plaintiff is required to rely on the assistance of his assigned case manager to obtain copies of documents. He claims in an ARP dated January 30, 2010, that he wrote to one of his case managers, Mr. Bittinger, seven times requesting copies without

6

receiving a response. ECF No. 28 at § 7. In response to his claim, prison staff noted that Plaintiff had been seen receiving numerous copies from his case manager and his claim was dismissed. In other ARPs Plaintiff claimed to have seven pending cases in the Circuit Court for Allegany County and three cases in the Maryland Court of Appeals in which deadlines were pending. He further claimed his cases were being compromised by the delays in providing him with copies. *Id*. at §14. In dismissing his complaint, staff noted that copies had been provided to him on numerous occasions and noted that he should allow more time for his requests to be met as his case manager had other duties to fulfill. *Id*. Plaintiff also claimed that he was denied request forms for copies of cases from LASI. An investigation revealed that Plaintiff routinely submitted requests to the library and the claim was dismissed. In another response to Plaintiff's complaints about LASI services it was noted that he had failed to establish that staff members were not adhering to the policy. *Id*. at §16.

With respect to the confiscation of documents from Plaintiff's cell, Defendant denies the allegation. ECF No. 19 at Ex. 2, p. 2. The only paperwork they acknowledge removing from Plaintiff's cell was taken on May 10, 2010, when the cell was searched based on a suspicion that Plaintiff's cell mate, Emmit Watson, possessed fraudulent information. *Id*. Defendant explains that when a cell is searched the property belonging to both inmates who share the cell is performed. *Id*. at Ex. 23. All property confiscated during that search was returned on May 25, 2010. *Id*.

Plaintiff's claim that he is improperly denied access to the administrative remedy procedure hinges on the limitation placed on the number of ARPs he could file per month. The limitation was put into place by Lt. Friend and Sergeant Shimko because of the large number of

7

ARPs Plaintiff filed per month, requiring investigation and draining staff resources. ECF No. 19 at Ex. 7. The Deputy Commissioner of Correction approved the limitation of five ARPs per month on March 16, 2010, and the restriction expired on September 16, 2010. *Id*. at Ex. 7, 13, and 18. Plaintiff has not claimed he was prevented from filing a meritorious claim due to the monthly limitation imposed.

Plaintiff does not allege an actual injury resulting from denial of photocopies, documents or legal research. Although he claims to be a party in numerous cases, he has pointed to no missed deadline or loss of a meritorious claim resulting from the alleged delays in providing him with copies or legal materials. Additionally, even if Defendant confiscated legal documents from Plaintiff's cell, there apparently was no actual harm the resulted to Plaintiff's ability to litigate a meritorious claim. While failure to allege actual harm may be an oversight on Plaintiff's part, it is doubtful he could remedy the issue. Plaintiff has filed numerous cases in this Court.[3] The pages of documents Plaintiff filed in this case alone number in the hundreds and includes numerous pages of exhibits as well as pages of case citations. *See* ECF No. 1, 4 and 28. Thus, it is clear that Plaintiff has not been denied access to courts.

<u>Retaliation and Harassment</u>

In order to prevail on a claim of retaliation, Plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). It is unclear how much of a showing of adversity must be made in order to survive a motion for summary

---

3 *See Lagana v. Baucom*, Civ. Action PJM-10-1232 (D. Md.), *Lagana v. Shearin*, Civ. Action PJM-10-3488 (D. Md.), *Lagana v. Tessema et al.*, Civ. Action PJM-10-3493 (D. Md.), *Lagana v. Morgan et al.*, Civ. Action PJM-10-3625 (D. Md.), *Lagana v. Morgan et al.*, Civ. Action PJM-11-85 (D. Md.), and *Lagana v. Morgan et al*, Civ. Action PJM-11-218 (D. Md.).

judgment. *Compare Burton v. Livingston*, 791 F.2d 97, 100-101 (8th Cir. 1986) ("complaint that a prison guard, without provocation, and for the apparent purpose of retaliating against the prisoner's exercise of his rights in petitioning a federal court for redress, terrorized him with threats of death" sufficient to state claim). "'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'" *Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim).

Plaintiff claims he was retaliated against for filing lawsuits. The alleged retaliation consisted of denial of a medical diet; sabotage of medical diet trays; being refused toilet paper; and being kept from seeing a doctor. During all times relevant to this complaint Plaintiff was confined to disciplinary segregation, and inmate his meals were brought to his cell. He claimed that he was prescribed a 2000 calorie a day diet, but did not receive it when it was prescribed. He alleged that the margarine he was served was purposely put under food so it would melt and he would be unable to use it. On another occasion Plaintiff complained that mustard had been served on his sandwich and he did not like mustard. ECF No. 28 at §§10 and 13. Plaintiff's complaints were dismissed with the explanation that the preparation of trays is supervised and every effort is made to insure they are properly prepared. To the extent Plaintiff's trays were not what they should be, Defendant claims the errors were inadvertent. *Id.* at §16. Defendant admits to a delay in Plaintiff's receipt of a medically prescribed diet, but attributes the brief delay to the failure of paperwork being forwarded to the appropriate personnel. ECF No. 19 at Ex. 8. The

evidence supports the conclusion that the errors were unintentional. Inadvertent delays and errors in meal preparation, without more, are not enough to establish a claim of retaliation.

Plaintiff filed numerous complaints with prison officials concerning limits on toilet paper in the disciplinary segregation unit. The policy is to provide one roll of toilet paper per inmate, per week. Plaintiff took issue with the policy and insisted more was needed. His complaints were dismissed as frivolous. There is no evidence that the denial of Plaintiff's request for more toilet paper was motivated by retaliation or harassment. Rather, it appears that Defendant was simply enforcing a policy for segregation inmates. Plaintiff does not allege that the policy was applied only to him; rather, he admits all segregation inmates are limited to one roll of toilet paper per week. Uniform enforcement of a neutral policy does not support an allegation of retaliation.

Plaintiff's claim that he was kept from seeing a doctor is less serious than it appears. The claim is not that Plaintiff was denied medical care all together, but that he was seen by a physician's assistant or a nurse instead of a doctor. ECF No. 28. A review of the medical sick call slips and ARPs filed by Plaintiff reveals that the issue arose because Plaintiff did not feel the need to wait even one day to be seen by medical staff. Plaintiff chose to continuously file requests to be seen before there was an opportunity to schedule him. Plaintiff was seen by available medical staff to determine if his request required immediate attention, but when Plaintiff insisted that he should be seen by a doctor instead, he became irate. Thus, there is no indication that Plaintiff was deliberately denied needed care for purposes of retaliation or otherwise.

**Conclusion**

Plaintiff has failed to produce evidence of any injury resulting from the conditions imposed, nor has he pointed to any injury to his ability to litigate challenges to his conviction or to the conditions of his confinement. Accordingly, Defendant is entitled to summary judgment in his favor. A separate Order follows.

May 17, 2011

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE